UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
COLE SYSTEMS ASSOCIATES, INC.

        Plaintiff,

    -against-

MUNICIPAL EMERGENCY SERVICES, INC.

        Defendant.
-----------------------------------------------------------X

Case No.: 08-cv-6417 (BSJ)(AJP)

**ANSWER AND COUNTERCLAIMS OF MUNICIPAL EMERGENCY SERVICES, INC.**

    Defendant Municipal Emergency Services, Inc. ("MES"), by and through its undersigned attorneys, hereby submits its Answer and Counterclaims to plaintiff Cole Systems Associates, Inc.'s ("Cole") Complaint. Except as expressly admitted herein, all averments in the Complaint are denied. MES states as follows:

### THE PARTIES

    1.    MES lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 1 and therefore denies them.

    2.    MES admits that it is a corporation organized and existing under the laws of the State of Nevada with its principal place of business at 75 Glen Road, Sandy Hook, Connecticut 06482.

### JURISDICTION AND VENUE

    3.    MES denies the averments of Paragraph 3 of the Complaint to the extent that the averments call for response to a legal conclusion except to admit that Plaintiff purports to state a claim in excess of $75,000 exclusive of interest and costs, and denies that Plaintiff is entitled to any relief on its claims.

4. MES admits the averments of Paragraph 4 of the Complaint.

5. MES admits the averments of Paragraph 5 of the Complaint.

6. MES admits the averments of Paragraph 6 of the Complaint.

## OPERATIVE FACTS

7. MES lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 7 and therefore denies them.

8. MES denies the averments of Paragraph 8 of the Complaint, except that MES admits that on or about December 8, 2006, Plaintiff and MES entered into an agreement pursuant to which Plaintiff was to install and customize software for MES.

9. MES denies the averments of Paragraph 9 of the Complaint.

10. MES admits that Plaintiff from time to time delivered invoices to MES, but denies the remaining averments of Paragraph 10 of the Complaint.

11. MES denies the averments of Paragraph 11 of the Complaint.

12. MES denies the averments of Paragraph 12 of the Complaint, except that MES admits that from time to time it made payments to Plaintiff.

13. MES denies the averments of Paragraph 13 of the Complaint.

14. MES denies the averments of Paragraph 14 of the Complaint.

15. MES denies the averments of Paragraph 15 of the Complaint.

16. MES denies the averments of Paragraph 16 of the Complaint.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

17. MES incorporates by reference its responses to the averments in Paragraphs 1 through 16 of the Complaint as though they were fully set forth herein.

18. MES denies the averments of Paragraph 18 of the Complaint.

19. MES denies the averments of Paragraph 19 of the Complaint.

20. MES denies the averments of Paragraph 20 of the Complaint.

21. MES denies the averments of Paragraph 21 of the Complaint.

### SECOND CLAIM
### (Account Stated)

22. MES incorporates by reference its responses to the averments in Paragraphs 1 through 21 of the Complaint as though they were fully set forth herein.

23. MES denies the averments of Paragraph 23 of the Complaint.

24. MES denies the averments of Paragraph 24 of the Complaint.

25. MES denies the averments of Paragraph 25 of the Complaint.

### THIRD CLAIM
### (Quantum Meruit)

26. MES incorporates by reference its responses to the averments in Paragraphs 1 through 25 of the Complaint as though they were fully set forth herein.

27. MES denies the averments of Paragraph 27 of the Complaint.

28. MES denies the averments of Paragraph 28 of the Complaint.

### FOURTH CLAIM
### (Unjust Enrichment)

29. MES incorporates by reference its responses to the averments in Paragraphs 1 through 28 of the Complaint as though they were fully set forth herein.

30. MES denies the averments of Paragraph 30 of the Complaint.

31. MES denies the averments of Paragraph 31 of the Complaint.

## ADDITIONAL DEFENSES

### First Additional Defense

32. The Complaint fails to state a claim against MES upon which relief may be granted

### Second Additional Defense

33. Cole's claims are barred to the extent that Cole fails or has failed to mitigate its damages.

### Third Additional Defense

34. Cole has suffered no injury or damages cognizable under any state or federal laws.

### Fourth Additional Defense

35. Cole's claims are barred to the extent that Cole fails to plead its claims with requisite particularity.

### Fifth Additional Defense

36. While denying any fault with respect to the subject matter of the Complaint, MES states that insofar as such fault on its part may be found, such fault did not proximately cause any damages allegedly sustained by Cole.

### Sixth Additional Defense

37. Cole's claims are barred by the doctrines of laches, estoppel and waiver, and accord and satisfaction.

### Seventh Additional Defense

38. Cole is not entitled to an award of counsel fees or costs of suit.

## Eighth Additional Defense

39. Cole's claims are barred to the extent that the events alleged took place outside the state of New York.

## COUNTERCLAIMS

For its Counterclaims against Plaintiff Cole Systems Associates, Inc., MES avers as follows:

40. MES's claims against Cole arise from Cole's failure to perform its contractual and legal obligations to deliver and implement an information systems solution pursuant to a contract known as the Dynamics AX Implementation Engagement, dated December 8, 2006 ("Implementation Engagement") and from Cole's false representations and promises regarding its capability intentions with regard to the following contracted system.

41. Specifically, the Plaintiff seeks a judgment declaring the rights of the parties regarding the payment provisions of the contract, and compelling Cole to pay MES the amounts Cole overcharged MES through the course of the Implementation Engagement whereby Cole was to deliver a software solution and provide training to MES employees on the use and implementation of the software, as well as damages sufficient to remedy the severe financial and operation losses suffered by MES as a result of Cole's failures.

*Implementation Agreement*

42. On or about December 8, 2006, MES and Cole entered into the Implementation Engagement for the development of a software system and consulting services.

43. Cole's initial representation as to the cost for the project described in the Implementation Engagement was that the cost for all necessary software development would be

$258,003, and that the cost for consulting services fee would be $367,300. MES relied on these representations in agreeing to the terms of the Implementation Engagement and to the retention of Cole to provide the necessary software and services contemplated by that engagement.

44. The software called for in the Implementation Engagement was intended to function as a businesses application software system known as Microsoft Dynamics AX ("Dynamics AX"). Dynamics AX is designed to consolidate and standardize business processes.

45. In order to assist with the financing of the Implementation Agreement, MES entered into a loan and security agreement dated as of December 21, 2006 (the "Microsoft Line of Credit") in a sufficient amount to cover the costs of the Implementation Engagement.

46. The fundamental purpose of the Implementation Engagement was to obligate Cole, in return for substantial payment, to install, customize, and support Dynamics AX sufficient to manage MES's business management and compliance, and to train MES personnel on its operation.

47. On information and belief, Cole was to design various software modules which would work through the Dynamics AX system that would handle MES's business management and compliance functions.

48. According to the Implementation Engagement, the project was to have four phases: (1) Scoping and Planning, (2) Design, (3) Configuration, and (4) Implementation.

***Scoping and Planning Phase***

49. From January 2007 through May 2007, Cole worked with MES in the Scoping and Planning phase.

50. Unknown at the time to MES, Cole failed to discharge its engagement obligation to familiarize itself with the business, operations and information technology infrastructure of

6

MES, a failure that began Cole's failures to perform its obligations to MES. This represented Cole's first, but not its last, failure to apply skills and procedures for engagements of this type commensurate with ordinary skill and diligence in the relevant market. Indeed, as subsequently became clear, but at the time was masked by Cole's representations to the contrary, Cole had either lost or never had the extensive supply chain and distribution experience it claimed to possess.

***Go-Live Date***

51. Eventually, a project plan was developed between MES and Cole which targeted a July 1, 2007 "go-live" target date, meaning the date MES represented that it would sufficiently complete its work such that the contracted-for system would be fully operational within MES's business and information technology environment.

52. In July 2007, due to Cole's failure to perform as agreed to, the "go-live" date was pushed back to October 1, 2007. On information and belief Cole knew, or had information sufficient to know, that it lacked the capability to meet either the original or the revised "go live" date, but concealed this fact from MES.

53. In July 2007, although contrary to the provisions of the Implementation Engagement, and in the face of its nonperformance, Cole informed MES that it would charge MES an additional $75,000 above and beyond the amounts agreed to for consulting services.

54. In late September 2007, Cole informed MES that several components of the contracted for system were not completed by Cole, notwithstanding its obligations to deliver them prior to the date of this notice. The "go-live" date was postponed again to November 1, 2007.

55. By October 2007, Cole had exhausted the Microsoft Line of Credit. Cole thereafter began invoicing MES directly for the additional charges and demanded immediate payment of the invoices, knowing that MES was by then hostage to the need to meet a "go live" imperative notwithstanding Cole's gross failure to deliver a satisfactory system on time and within the financial terms agreed to by the parties.

56. On or about October 31, 2007, again knowing the vulnerable and untenable position its failures (and Cole's failure to acknowledge them), Cole threatened to cease work on the project one day before the much delayed "go-live" date if its direct invoices were not immediately paid in full. Cole was not entitled to the demanded payment, but nevertheless threatened to leave MES with a non-functional system if its demand was not met. So as to avoid the complete failure of the critical project, MES paid the amount demanded under protest.

57. On or about November 1, 2007, months after the agreed to date and on the basis of very large overcharges by Cole, the Dynamics AX system nominally went live.

58. Over the next sixty days, substantial and critical operational and functional features of the contracted system failed to meet both MES's needs and Cole's representations about the functionalities of the system. In effect, the system Cole delivered was late, overbilled, and inadequate.

59. Compounding the defects, from January 2008 through April 2008, MES discovered additional serious deficiencies with the financial functionalities of the software.

*Non-Operational Modules*

60. Cole also failed to deliver several important operational software modules, and even invoiced and overcharged MES for services provided in connection with non-operational software modules.

61. Compounding further its nonperformance, Cole charged MES for additional time spent by Cole to remedy system nonperformance resulting from Cole's planning and implementation errors and its lack of expertise of the type it had represented to MES that it possessed.

62. As a result of Cole's long list of failures, MES was required to incur many hours of work on its own, in order to overcome Cole's inadequacies, expenses and costs that would not have been incurred but for Cole's breaches of its contractual obligations and its representations.

63. In sum, for the period from October 10, 2007 through June 30, 2008, Cole improperly invoiced and overcharged MES in excess of $300,000.00.

64. From December 8, 2006 through October 10, 2007, Cole improperly invoiced and overcharged MES in an amount not yet known to MES but representing substantial and unjustified overcharges.

65. In addition, MES has incurred and will incur costs to cover Cole's failure to perform its obligations in an amount not yet known to MES, but believed to be in excess of $200,000.

**COUNT ONE**
**(Breach of Contract)**

66. MES repeats and realleges each and every allegation contained in Paragraphs 1 through 65 of this Answer, as if fully stated herein.

67. A contract existed between Cole and MES in which Cole agreed to implement the Dynamics AX software system and create corresponding modules.

68. Cole breached the contract by failing to perform by providing non-functional modules. Cole also breached its duties under the contract by overcharging MES for work required by the parties' agreement.

69. Cole's breach of contract has damaged MES in an amount to be determined at trial, but in no event less than $500,000.

## COUNT TWO
### (Unjust Enrichment)

70. MES repeats and realleges each and every allegation contained in Paragraphs 1 through 69 of this Answer, as if fully stated herein.

71. MES conferred a benefit on Cole by paying for services which were not necessary and were provided only in response to Cole's own negligence.

72. Cole received, and had knowledge of, the benefit conferred.

73. The value of the benefit conferred by MES upon Cole totals no less than $300,000.

74. Defendant has been unjustly enriched, to the detriment of MES, in an amount to be determined at trial, as a result of Defendant's improper invoicing and overcharging for the benefit conferred.

## COUNT THREE
### (Connecticut Unfair Trade Practices Act)

75. MES repeats and realleges each and every allegation contained in Paragraphs 1 through 74 of this Answer, as if fully stated herein.

76. Cole's Implementation Engagement and marketing and advertising materials constituted affirmative misrepresentations of Cole's capabilities and the services it could or did provide.

77. Cole's claims and misrepresentations constitute activities that are immoral, unethical, unscrupulous, and offensive to public policy as has been established by statutes, the common law, or otherwise.

78. MES was substantially injured by these affirmative misrepresentations.

79. Cole's unfair trade practices were committed in the course of Cole's conduct of trade or commerce in the state of Connecticut.

80. Cole's practices offer no benefits to consumers or to competition.

81. MES could not have reasonably avoided relying on Cole's affirmative misrepresentations.

82. Cole made unsubstantiated claims regarding their ability to enter into and carry out the terms of the Implementation Engagement.

## REQUEST FOR RELIEF

WHEREFORE, MES demands judgment against Plaintiffs as follows:

a. actual and punitive damages in amount to be determined at trial, but in no event less than the amounts stated above;

b. pre-judgment interest as determined by this Court;

c. post-judgment interest as determined by this Court;

d. costs of this lawsuit, including attorneys' fees and expenses; and

e. such other and further relief as this Court deems just and proper.

## JURY DEMAND

MES demands a trial by Jury of all claims so triable.

Dated: August 7, 2008
       New York, New York

                                Respectfully submitted,

                                THOMPSON HINE LLP
                                Sunny H. Kim
                                Amir Shaikh
                                335 Madison Avenue, 12th Floor
                                New York, NY 10017
                                T: 212.344.5680
                                F: 212.344.6101